DOWNEY, Chief Judge.
Mr. and Mrs. Molitor and Mr. and Mrs. Atkins formed a corporation, Titusville Answering Service, Inc., the corporate stock of which was equally divided between them. The parties entered into a Stockholders Agreement “to set forth their understanding and agreement as between them and said Corporation”. In pertinent part the Stockholders Agreement provided that the authorized stock of the corporation was 500 shares. With reference to the sale and valuation of the corporate stock the agreement states:
“7. That the parties hereto will not sell, alien or convey the stock now held by them to any person (excepting only MR. AND MRS. MOLITOR, or either of them may convey or assign all or any part of the stock held by them to DONALD N. MOLITOR without violating any of the terms hereof) without first offering same to the Corporation at the price determined as being its value, in accordance with the annual audit of the Corporation. Upon the completion of the annual audit of the Corporation, the auditors shall certify as to the value per share of the Corporation’s capital stock, taking into account the then market value of all of the Corporation’s assets. Unless excepted to in writing within thirty (30) days, this value shall be conclusive upon the Stockholders. However, and as an alternate method available to the Stockholders at their unanimous option and provided further, that the decision to exercise said option is conveyed in writing to the Corporation within said thirty (30) day period aforesaid, the Stockholders can convene in special meeting for the purpose of establishing a per share value of the capital stock of the Corporation taking into consideration such intangible items as goodwill, competition, economic conditions generally in the service area of the Corporation, etc. The per share valuation so determined by the Stockholders shall be binding upon them for the purposes hereinafter recited until the next annual audit. In the event that no agreement is reached by the Stockholders then the valuation determined by the auditor shall govern. In the event the Corporation does not accept the offer of the stockholder to sell his stock to it, the Stockholder will next offer it to the remaining Stockholders, in equal portions, at the price at which he proposes to sell it to any person other than the parties hereto, and will give the other Stockholders the right of first refusal of any offer of sale made by him. In the event *555 that one or more of the remaining Stockholders do not desire to exercise their right to purchase the stock of the offering Stockholder, then and in such event, the remaining Stockholders can purchase, on the same terms and price, such additional shares.
“8. That in the event of the death of either the survivor of MR. AND MRS. MOLITOR or the survivor of MR. AND MRS. ATKINS, the Corporation will purchase, and the representative of such deceased Stockholder will sell, the stock held by such decedent at its value, as determined in accordance with the provisions of the preceding paragraph governing the sale of stock to the Corporation, said purchase price to be paid as follows, to-wit: 29% of said value in cash, and the remainder in debenture notes of the corporation. The debenture notes which are to be issued upon offer of said stock for sale, shall pay interest at not less than 6.5% per annum, shall mature serially over a period of three (3) years with interest payable annually. The said debenture notes shall take priority in liquidation, and shall be secured by a pledge of the capital stock purchased with said debenture notes. In the event of default in the payment of principal or interest when due, all of said debentures shall become due and payable, and the holder thereof shall be entitled to receive in full payment thereof the capital stock of the Corporation pledged as aforesaid.”
Both of the Molitors died in 1973, the wife being the survivor. On January 21, 1974, counsel for the Atkins wrote appellant enclosing a copy of a letter from the corporate accountant which, among other things, states that “[b]ased on the book value the Stock is worth $1436.00 or $2,872 per share”. Mr. Atkins referred to counsel’s letter as an offer on behalf of the corporation to buy the Molitor shares using the book value set by the accountant. In April 1974 appellant wrote counsel for appellee and advised that the personal representative was interested in negotiating an acceptable valuation for the stock in accordance with the Stockholders Agreement and specifically calling counsel’s attention to the provision for evaluating the stock in the context of the market value of the corporate assets. Soon thereafter this litigation ensued with the corporate appellee suing for specific performance of the Stockholders Agreement requiring the appellant to sell the Molitors’ shares to the corporation. Appellant filed a counterclaim and third party complaint in which it prayed: 1) for specific performance of an offer to buy or sell pursuant to Paragraph 16 of the Stockholders Agreement, 2) for judgment for dividends due and owing on the Molitor stock, 3) for a restraining order to prohibit the corporation and the officers from violating their duties, and 4) for dissolution of the corporation.
The evidence adduced at trial showed that the parties had never really complied with the strict terms of the Stockholders Agreement. Specifically, they never required the accountant to make an annual audit of the corporation or required him to certify the value of the stock, taking into account the market value of the corporate assets. The accountant had made monthly reports styled “Statement of Operations” showing income and expenses and he had prepared the corporate income tax return. However, neither had there been an “audit” nor any gesture toward certification of the value of the stock until the accountant’s letter forwarded to appellant by appellee’s counsel in January 1974. A Certified Public Accountant testified the corporation was on a cash basis and an “audit” could not be performed.
The trial court entered final judgment for appellee and ordered appellant to convey the Molitors’ shares to the corporation at the book value found by the accountant for fiscal year 1973. The rational of the trial court’s ruling was that the parties had not complied with the terms of the agreement but rather had treated the tax return *556 as the “audit” provided for; they had not insisted upon a certified stock valuation based upon the market value of the corporate assets, but had accepted the book value produced on the form 1120S Balance Sheet. Thus, the trial court concluded the book value became the conclusive value of the shares.
We feel the trial court misinterpreted the legal effect of the evidence. To begin with, it is quite apparent from the face of the agreement that the parties desired to keep the stock closely held if at all possible. In pursuance of that concept it was agreed that upon the death of both of the Molitors or Atkins the decedents’ stock would be bought by the corporation at its value based upon the market value of the corporate assets as determined by the last annual audit. Regardless of whether the corporate books were subject to “audit” in the strict sense of that word, it is clear the parties never intended to dispose of their stock pursuant to paragraphs 7 and 8 of the agreement at anything less than the value of the stock based upon the market value of the corporate assets. The fact that during the three years of corporate operation none of the parties insisted on receiving proper certification of the value of the stock does not impress us as a waiver of the right upon sale to receive that value. No doubt until such time as a sale was imminent there was no need for the parties to know the stock’s value based upon the market value of the corporate assets.
Thus, we hold that, if appellee corporation is entitled to specific performance at all, it would be on the basis of a purchase of the Molitors’ stock at its value based upon the market value of the corporate assets as of the date of Mrs. Molitor’s death. We do not conclude that the corporation is or is not entitled to specific performance because we feel that the trial court should make that determination in conjunction with his determination of the issues raised by appellant’s counterclaim and third party complaint.
The final judgment makes no mention of the appellant’s counterclaim and third party complaint. However, the transcript of the testimony reflects that the trial judge felt he need not rule on appellant’s counterclaim and third party complaint if he granted appellees’ complaint for specific performance. Right or wrong, in view of our reversal of the judgment, it is incumbent upon him to now consider appellant’s counterclaim and third party complaint and rule thereon and, if necessary, take further testimony on the issues raised by the pleadings.
Accordingly, the judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED with directions.
LETTS and ANSTEAD, JJ., concur.